This is a suit for damages arising, out of a collision between a dump truck and a bus and which occurred on December 1, 1945, at about five o'clock in the afternoon on a gravelled highway between Elizabeth and Pitkin, in the Parish of Vernon.
The plaintiff, Bill D. Gibbs, who is the owner of the truck, was riding with a young man by the name of Ralph Nolen who was driving. The bus which was involved in the accident belongs to Forest S. Whittlessey, who operated as a common carrier of passengers under the trade name of East Texas Motor Coaches. It was insured by the Highway Insurance Underwriters and both Whittlessey and the insurance carrier are made defendants in the suit.
Plaintiff alleges that as a result of the collision he was severely injured in his back and that because of said injury he has become disabled and cannot any longer earn his living. He claims a large amount of damages for physical pain and suffering, *Page 242 
for permanent disability, for the repairs to his truck as well as loss of its use and also for doctor's bills. The total amount of his demand is the sum of $16,669.50.
In his petition he avers that just prior to the collision the truck which was preceding the bus, both running in a northwesterly direction, went over the top of a hill and was going down the slope towards a side road which intersects the gravel road on the south and that as it reached a point about forty to fifty steps from the side road, the driver looked in the rear view mirror and observing no traffic coming behind him as far as the top of the hill, he gave a hand signal as he intended to turn into the side road on the south; that the truck continued very slowly until it reached a point some 10 or 15 feet from the side road when the driver again looked in the rear view mirror and again gave a left hand signal. That he afterwards proceeded slowly across the highway and when he had reached a point where the front wheels of the truck were in the intersection of the side road and the middle of the truck was about in the center of the ditch on the south side of the highway, the bus struck the truck on the front left side, the impact of the collision causing the injuries and damage which resulted. He avers that the collision was caused by the negligence of the bus driver in operating the bus at an excessive rate of speed under the conditions existing at the moment and which made it extremely dangerous; that he was operating the bus over the hill on the left side of the highway; that he failed to keep a proper look-out and failed to see, or if he did see, he failed to heed the signals of the truck driver that he was going to make a left hand turn and that he failed also to sound his horn or give any other signal to warn the driver of the truck that he was going to overtake it.
The defendants filed a joint answer in which they admit that the accident took place at the point and at the time alleged but deny that it took place in the manner in which the plaintiff avers and deny also that it was caused by the fault of the driver of the bus. They aver on the contrary that it was caused solely by the negligence of the driver of the truck in suddenly swerving the same across the road without any warning or sign whatever after the bus driver had blown his horn several times and was about to pass ahead of the truck on the left.
The case was tried on these issues as presented to the court below after which there was judgment in favor of the defendants and against the plaintiff rejecting his demand and dismissing his suit. From that judgment plaintiff has taken this appeal.
[1] It is readily observed that the case presents a sharp conflict on the question of whose negligence caused the accident complained of and in order to reverse the judgment of the lower court it will be necessary for this Court to hold that there was manifest error committed by the trial judge in deciding this issue.
The vital and important point to be considered is how far back of the truck was the bus at the moment the truck started to make its left hand turn into this side road. The highway on which both vehicles were travelling has a gravelled surface and as we appreciate the testimony, the side road into which the truck was turning is a rather obscure dirt road leading more or less into an isolated section of Vernon Parish. The plaintiff lived about a mile or a mile and a half down that road and he and the driver of the truck were on their way to his, home.
[2] The testimony shows that there is a definite slope from the crest of the hill which appears to be approximately seventy-five yards or 225 feet east of the side road. The first contention made by the plaintiff seems to be that the truck was preparing to make a left hand turn into the said road at the moment when the bus was just about going over the crest of that hill. If that were so the driver of the bus would have had 225 feet within which to observe the maneuver of the truck and necessarily within that distance should have taken the necessary precaution to bring his bus under proper control and let the truck complete its left hand turn ahead of him. We can hardly believe that that was the situation which existed at the time for, undoubtedly, the bus Would have had to be coming at a tremendous and very dangerous *Page 243 
rate of speed for the driver not to have been able to bring it under control and avoid running into the truck. No witness, as far as we can see, testified to this as a fact and plaintiff has attempted to establish it by means of photographs which, it is urged, prove various distances by physical marks on the highway. It is contended that these physical marks show that the bus, in passing over the top of the hill, was on the left hand side of the road and that by a skid mark that had been left, it was shown that it swerved onto the left shoulder of the road a distance variously estimated from seventy to seventy-five steps up the hill from the side road. It is contended that these photographs further show, by marks on the road, that the bus ran along the shoulder some thirty steps further and then ran off the shoulder into a ditch to a point about five steps from the point of impact when it then cut through the outside bank of the ditch and proceeded to strike the truck.
It is important to observe, we think, that the photographs were taken more than seven months after the accident had occurred and it is rather hard to believe that those physical marks relied on by the plaintiff to establish the facts he rests on, still existed on that gravelled road. As a matter of fact he does not claim that the marks show at all in the photographs but relies on some physical objects which were placed on the highway at the various points where these marks were said to appear. We could understand how it would be difficult to have the physical marks themselves appear in the photographs but it would seem a bit remarkable that skid marks and traces in the gravel road would remain so clearly visible for a period of seven months, especially where there surely must have been some rainfall during all that space of time. We are unable therefore to attach any more importance to the facts sought to be established by these photographs than that they reflect only the recollection of the witnesses as to the various distances where these marks occurred and they carry no greater weight than their testimony as given on the witness stand.
[3, 4] In addition to these photographs plaintiff seems to rely on the testimony of Vernon Wilson who was a passenger on the bus and who testified that he was looking ahead as the bus came over the hill and saw the truck which was at that moment in the act of beginning its left hand turn into the side road. When we consider that this witness was a young boy only ten years old; who was riding on the bus with his mother, and who, from the testimony of other witnesses, appears to have been moving around considerably in the bus, we doubt whether much weight should be given to his testimony.
As against the testimony produced by the plaintiff on this very important issue of fact, we have to consider that of the defendant's witnesses. In addition to the driver of the bus whose name is Thornton, a man by the name of Lee Montiville, a lady by the name of Mrs. Eva Bourg and another by the name of Mrs. Ross Quave gave testimony on this point. Taking up the testimony of Mrs. Quave first, it would seem that it was only when the bus got within thirty or thirty-five feet of the truck that the truck began to make its left hand turn, whereupon the bus driver pulled over to his left and got out of the road in a last effort to try to pass around. Mrs. Bourg does not estimate the distance in number of yards or feet but states that when the bus got close to the truck; the truck attempted to cross the road in front of the bus and the bus driver attempted to dodge it. Montiville, the other witness, states that when the bus was about twenty feet behind the truck, the truck suddenly turned to the left and the bus driver then also turned to his left trying to avoid a wreck. The driver Thornton estimated that he was possibly forty feet from the truck when he blew his horn to signal his intention to pass; that just at the same moment the truck driver threw his hand out to the left indicating that he would make a left hand turn and almost simultaneously he cut across the road. He applied his brakes but he was then too close to the truck to stop the bus so he pulled to his left and across the ditch in an effort to go around it.
Weighing the testimony on both sides on this controlling point in the case we find that not only has the plaintiff failed to *Page 244 
prove by a preponderance of the testimony that the bus was far enough in the rear of the truck, when he started to make his left hand turn, in order to stop and let him proceed in making the turn but on the contrary the testimony favors the defendants that at the moment the truck started to turn to the left the bus was no more than forty or forty-five feet back of it, and that being so, it was absolutely impossible for the driver to avoid colliding with the truck in some manner.
If we were to assume that the bus was* at a considerably further distance, the next point we would have to consider would be the speed at which it was going and whether its speed could be said to have been a proximate cause of the accident. The only testimony on this point which is unfavorable to the defendants is that of Mrs. Luther Wilson, the mother of the young boy whose testimony we have already referred to. She says that the bus was going as fast as sixty miles an hour. She seems to attach some importance to the fact that Mrs. Bourg, to whom she was talking just before the accident happened, had complained about the speed at which the bus was going. It is significant however that Mrs. Bourg herself did not testify that the bus was travelling at any excessive rate of speed as she speaks of it going at probably forty-five miles an hour. From her testimony it does appear that she had been talking to Mrs. Wilson about the speed of the bus and that she was a bit apprehensive about it but she admits that she is always nervous when riding in a bus and any speed more than thirty-five miles an hour makes her concerned about her safety. All other testimony with regard to the speed of the bus by no means indicates that it was excessive or so dangerous that the driver could not have brought it under control had the truck been at a sufficient distance ahead of it when it began to turn on the highway. Plaintiff seems to stress the point that in the impact the truck was pushed some several feet and the bus then continued forward, rooted up a pine stump on the south side of the ditch and did not come to a stop until some twenty-six paces from the point of impact. But that, in our opinion, only goes to show the bus driver's desperate effort to try to pass around and ahead of the truck in order to avoid an accident.
We conclude therefore that the speed at which the bus was going before the driver noticed that the truck was going to make this left hand turn and the danger which would lie ahead as a result of his maneuver had nothing to do with the accident itself and cannot be said to be a proximate cause of the collision.
The last point to be discussed is with regard to the giving of warnings or signals by the driver of the bus as he approached the truck with the intention of passing ahead of it. On this point there is the same conflict in the testimony as on the others which have been heretofore discussed. Of what testimony there is however, that on the side of the defendants, we find to be of an affirmative character, whereas that presented by the plaintiff is purely negative. The driver of the bus is positive that he sounded the horn of the bus when he was between thirty-five and fifty feet from the truck which was at about the same moment that the truck driver gave his hand signal of his intention to make the turn on the highway. Montiville testified positively that he heard the horn signal given but in as much as his testimony is questioned because of a statement he is said to have made to one of the attorneys for the plaintiff before the trial, to the effect that there was no horn signal given, that part of it on this point can be discounted. Mrs. Quave is positive that the horn signal was given before the bus driver attempted to go around the truck. All the witnesses for the plaintiff testified that they did not hear the horn blow, if it was blown. That, as we say, does not mean that it was not blown. Plaintiff himself and the driver of the truck both testified that they did not hear it, which in effect amounts to the same as the testimony of plaintiff's other witnesses. Plaintiff called as another witness, a party by the name of Thompson, who resided a good distance from the highway and who also says that he did not hear the horn; but certainly not much weight can be attached to his testimony as there would be no reason which we can think of why he *Page 245 
should have been paying any attention to whether a horn signal was being blown on the highway or not before he heard the noise of the impact.
But again let us assume that plaintiff did not blow a horn signal, if we accept the defendants' testimony with regard to the distance how far the bus was behind the truck when the truck started to turn on the highway, certainly a horn signal would not have done any good in the way of avoiding the accident and it seems, the same as with regard to the matter of speed, the bus driver's failure in that respect could not be said to be a proximate cause of the accident.
In discussing the matter of signals it may be as important, in our opinion, to consider whether the driver of the truck indicated by proper signal, his intention to make a left hand turn on the highway and whilst he says he gave one, no one in the bus saw any such signal given until he was just about ready to start his turn.
There is another point however on which we believe that the negligence of the driver of the truck stands out more than any other negligence we find in the case and that is his failure to look or if he did look, to have seen the bus in the rear of him, when he says he looked in his rear view mirror. He states that when he looked the first time he was about forty or fifty yards from the side road and he did not see it. Yet he never looked again until he was within ten or fifteen feet of the side road in which he intended to turn, and still, he says, he did not see it. Why he did not, we cannot understand, and he does not explain. It seems to us that if he intended to make a left hand turn on the highway, he should have looked again before he did after the first time, when it may be presumed that the bus was still on the other side of the hill, and while he was within such distance between the hill and the side road that he could have made certain that there was no traffic coming back of him which might be impeded by his turning or which would interfere with his movement if it was back far enough from him. The rule is, that to guard against negligence the driver must look for approaching traffic at a time when looking can be made effective. In this case, on both occasions when the truck driver looked it was at a time when looking was ineffective.
Summing up the case therefore, we find that on all the points on which the plaintiff relies to prove negligence against the driver of the bus he has failed and on the other hand we are convinced that it was the negligence of the driver of the truck in not taking the necessary precautions he should have in order to make a left hand turn into an obscure side road on the highway, and particularly in failing to have looked to see that there was no traffic close enough to him to venture in this movement that caused the accident. That was the duty which the law imposed on him under Rule 9(a) Sec. 3 of Act No. 286 of 1938, and in which he failed.
The judgment below which rejected plaintiff's demand and dismissed his suit is correct and it stands affirmed at his costs.